# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN COLLEEN CASTANEDA,<br><br>  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Case No. 1:24-cv-00437-SAB<br><br>ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 9, 11) |

## I.

## INTRODUCTION

Plaintiff Carmen Colleen Castaneda ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits and supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of the Commissioner be vacated and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") failed to

develop the record and failed to adequately consider the nature and intensity of Plaintiff's alleged physical symptoms.

For the reasons explained herein, the Court will reverse the decision of the Commissioner and remand to the agency for further proceedings. 42 U.S.C. 405(g).

## II.

## BACKGROUND

### A.  Procedural History

On July 24, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income. (ECF No. 8, Administrative Record ("AR"), 17.) Plaintiff's applications were initially denied on January 11, 2021, and denied upon reconsideration on May 21, 2021. (AR 17.) Plaintiff requested before a hearing before an ALJ. On January 4, 2022, Plaintiff, represented by counsel, appeared for a telephonic hearing in front of an ALJ where Plaintiff and vocation expert ("VE") Larry Underwood testified. (Id.) On April 27, 2022, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 29.) On January 25, 2023, the Appeals Council denied Plaintiff's request for review. (AR 8-12.)

### B.  The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2023, and that Plaintiff had not engaged in substantial gainful activity since May 25, 2020, the alleged onset date. (AR. 19.) The ALJ found that Plaintiff had the following severe impairments: heart disease status post stenting procedures, obesity, CREST syndrome, diabetes mellitus, anxiety, and major depressive disorder. (Id.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except Plaintiff could only occasionally climb ramps and stairs; never climb ladders, ropes, and

1  scaffolds; occasionally stoop, balance, kneel, and crouch; never crawl; never work at unprotected

2  heights; frequent handling/fingering with the bilateral lower extremities; no more than occasional

3  exposure to extreme cold, humidity wetness, and pulmonary irritants.  (AR 21-22.)  In addition,

4  the ALJ found that Plaintiff was limited to simple, repetitive tasks in a work environment that is

5  not fast-paced with no strict production quotas.  (AR 22.)

6        The ALJ then found that that Plaintiff was unable to perform any past relevant work, she

7  was 50 on the alleged onset date, and he had at least a high school education.  (AR 27-28.)  The

8  ALJ discussed that transferability of job skills was not material to the determination of disability

9  because using the Medical-Vocational Rules as framework supported a finding that Plaintiff was

10 "not disabled," whether or not Plaintiff had transferrable job skills.  (AR 28.)  Considering

11 Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that

12 existed in significant numbers in the national economy that Plaintiff could perform.  (Id.)

13 Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the

14 Social Security Act, from May 25, 2020, through the date of the decision, April 27, 2022.  (AR

15 29.)

16       Plaintiff sought timely review of the Commissioner's decision in the federal courts.  (ECF

17 No. 1.)  The parties consented to the jurisdiction of the United States Magistrate Judge.  (See ECF

18 Nos. 14, 15.)  Thereafter, the parties filed their briefs on the matter,[1] which the Court considers

19 without a hearing.  L.R. 261(f).

20 / / /

21 / / /

22 / / /

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective.  Rule 5 states, "[t]he action is presented for decision by the parties' briefs."  Fed. R. Civ. P. Appx. Rule 5.  The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules."  Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022.  Like an appeal, "the briefs present the action for decision on the merits.  This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record."  Id.  The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record."  Id.  Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner.  42 U.S.C. § 405(g).

# III.

# LEGAL STANDARD

### A. The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

---

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3] "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v.

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not carry the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1  Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is
2  not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more
3  than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as
4  adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024),
5  quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence
6  which, considering the record as a whole, a reasonable person might accept as adequate to support
7  a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of
8  Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

9     Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454
10 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability
11 determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v.
12 Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless
13 "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d
14 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

15    Finally, "a reviewing court must consider the entire record as a whole and may not affirm
16 simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153,
17 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).
18 Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the
19 Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d
20 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is
21 not this Court's function to second guess the ALJ's conclusions and substitute the Court's
22 judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational
23 interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting
24 Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

**IV.**

**DISCUSSION AND ANALYSIS**

27    Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the ALJ failed to
28 develop the record in relation to Plaintiff's physical impairments and RFC calculation. (ECF No.

9, pp. 5-7.) Second, Plaintiff contends that the ALJ erred by failing to explain why the ALJ rejected Plaintiff's subjective allegations regarding her symptoms, which led to the ALJ failing to include relevant work-related limitations in the RFC. (Id. at pp. 7-12.) The Commissioner opposes, arguing that substantial evidence supports the ALJ's decision. (ECF No. 11.) The Court agrees with Plaintiff on both arguments.

### A. The ALJ Failed to Develop the Record

Plaintiff argues that, when calculating the RFC, the ALJ did not have a medical opinion regarding Plaintiff's ability to function—specifically the ability to stand—following her heart surgery. (ECF No. 9, p. 7.) The Commissioner responds that notwithstanding that there was no medical examination of Plaintiff following December 2020, the ALJ's duty to develop the record was not triggered. (ECF No. 11, p. 7.) Plaintiff is correct.

"The claimant has the burden of proving that she is disabled." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003), quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "[I]t is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. [The ALJ] must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Id., quoting Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). Further, the ALJ's duty to develop the record fully is heightened where the claimant may be mentally ill and thus unable to protect his own interests. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001), citing Higbee, 975 F.2d at 562.

The Ninth Circuit has explained that ambiguous evidence, or where the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." Tonapetyan, 242 F.3d at 1150, quoting Smolen, 80 F.3d at 1288; Mayes v. Massanari, 276 F.3d 453, 459.60 (9th Cir. 2001). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow

1  supplementation of the record." Id. (citations omitted).  Similarly, the regulations provide the ALJ
2  may order further consultative examination to "resolve an inconsistency in the evidence or when
3  the evidence as a whole is insufficient to support a determination or decision." See 20 C.F.R. §
4  416.919a.  Examples of situations under which further developing the record may be required
5  include when the additional evidence needed is not contained in the records of the claimant's
6  medical sources, and when highly technical or specialized medical evidence not available from the
7  claimant's medical sources is needed.  20 C.F.R. § 416.919a(b).  Once the duty to further develop
8  the record is triggered, failure to do so constitutes reversible error.  See Tonapetyan, 242 F.3d at
9  1150-51.

10      It is undisputed that Plaintiff experienced heart disease and had a coronary artery bypass
11 graft surgery in November 2020.  (AR 19, 896.)  On December 22, 2020, Plaintiff was seen by
12 consultative examiner Roger Wagner, M.D.  (AR 897.)  In his functional assessment of Plaintiff,
13 Dr. Wagner opined that for maximum standing and walking capacity, "[a]t this time up to four
14 hours given the recent hearty surgery.  This would be for a short term limitation and she should be
15 reassessed after a few months of healing from her heart surgery."  (Id.)  As the Commissioner
16 concedes, two state agency medical consultants, separately for an initial and reconsideration
17 evaluation, reviewed Plaintiff's medical *records*, including the December 22, 2020 examination
18 record made by Dr. Wagner.  (ECF No. 11, p. 8) (citing AR 94-96, 116-18, 141-43, 164-66.)
19 Based on a review of records only, R. Fast, M.D., and A. Nasrabadi, M.D., both opined that
20 Plaintiff could stand and/or walk six hours in an eight-hour workday.  (AR 64, 116, 142, 165.)

21      In addition, Plaintiff offers that at the hearing before the ALJ, Plaintiff moved in a
22 December 2, 2021 General Assistance Employability Examination Report, completed by a doctor
23 at Sequoia Health & Wellness Centers.  (AR 48, 1138-41.)  In this report, Magda Ramirez, M.D.,
24 opined that Plaintiff's "health is fragile."  (AR 1138.)  Finally, Plaintiff notes that at the hearing
25 she testified that if she does go out of her house, she "take breaks" when walking and gets short of
26 breath.  (AR 62.)  Specifically, Plaintiff testified that she would need to take a break about every
27 15 minutes when walking in a store to catch her breathe.  (AR 64-65.)

28      In the opinion, the ALJ found Drs. Fast's and Nasrabadi's opinions "persuasive insofar as

1 [they] concluded that [Plaintiff] can perform light work and . . . [can] stand and or walk about 6
2 hours in an 8-hour workday." (AR 26.) For Dr. Wagner, the ALJ found that this opinion was
3 unpersuasive "insofar as [Plaintiff] can perform less than light work." (Id.) The ALJ
4 acknowledged Dr. Wagner's opinion regarding standing and walking for only four hours and that
5 Plaintiff should be reassessed in a few months. (Id.) The ALJ then stated that:

> This limitations [sic] are temporary in nature and subject to recent surgery and are inconsistent with physical examination findings subsequent to healing showing no deficits in motor strength, gait, reflexes or sensation and a return to normal ejection fraction. (Exhibit 11F and Exhibit 17F, p. 15). They are likewise unsupported by the ongoing treatment including routine follow-up and prescribed medication."

10 (AR 26.) The Court notes that Exhibit 11F is Dr. Wagner's consultative examination record.
11 Exhibit 17F, page 15, is an April 20, 2021 cardiology office clinic note from Kaweah Delta
12 Hospital, wherein Ankur Gupta, M.D., did not record anything relating to standing, walking, or
13 length of time Plaintiff could do for either (the Court also reviewed the entire cardiology note, AR
14 1018-22). The ALJ did not provide citations for Plaintiff's ongoing treatment or routine follow-up
15 and prescribed medications.

16 In light of the foregoing, the Court finds that the record is ambiguous and incomplete as to
17 the length of time Plaintiff was able to stand. Dr. Wagner physically examined Plaintiff roughly
18 one-month post-surgery and opined that at that time, Plaintiff could stand four hours of an eight-
19 hour workday. However, Dr. Wagner noted that this opinion would need to be "reassessed" later
20 given the recency of the surgery. Later, two state consultative examiners reviewed Dr. Wagner's
21 record and based on records alone concluded that Plaintiff could stand for six hours of an eight-
22 hour workday.[4]

23 In support of its position, the Commissioner offers Galindo v. Kijakazi, No. 1:22-cv-
24 00373-GSA, 2024 WL 1257349 (E.D. Cal. Mar. 25, 2024). While framed as a duty to develop the
25 record analysis, in Galindo, the court was focused on the plaintiff's contention that the ALJ's RFC

---

[4] The Commissioner does not dispute Dr. Wagner's assessment and the state agency reviews. Instead, the Commissioner argues that Plaintiff's characterization that her health has worsened over time is inexact because Plaintiff had consistently reported severe symptoms through the relevant period. (ECF No. 11, p. 7-8.) While potentially true, this argument does not seem to aid the Court in determining whether the record was ambiguous or incomplete.

9

was not supported by any medical opinion because the ALJ did not reference it in its order. Id. at *3. The court noted that while examining opinions are important, they are not required for an ALJ to make a valid RFC. Id. at *3-*4. The court then analyzed the records the plaintiff asserted created ambiguity or incompleteness and found these arguments to be without merit. Id. at *4-*6. Thus, the court determined that the ALJ's duty to develop the record had not been triggered. Id. While this opinion highlights that an examining opinion is not required for an ALJ to calculate an RFC, it does little to persuade the Court that the record here was not ambiguous or incomplete.

The Commissioner then switches tactics, arguing that Plaintiff is conflating the RFC as a medical finding when it is actually an administrative finding. (ECF No. 11, p. 8.) The Commissioner cites to agency regulations and caselaw that empowers the ALJ to resolve conflicts where there are ambiguities in the medical evidence. (Id. at p. 9.) With this understanding, the Commissioner frames the two opinions at issue as the ALJ resolving an ambiguity. In her reply, Plaintiff argues that the Commissioner has mischaracterized her arguments and is making up *post hoc* rationalizations for the ALJ, which is not permitted. (ECF No. 12, p. 2.)

While the ALJ is empowered to resolve conflicts in the medical records, that is a separate issue as to whether the ALJ's duty to develop the record was triggered and later satisfied. Moreover, the ALJ must still support its determination. Here, the ALJ discounted Dr. Wanger's opinion by citing to later records that speak to nothing regarding Plaintiff's ability to stand. Thus, the only fact that the Court can discern that the ALJ could have relied upon when deciding between the opinions of Drs. Fast and Nasrabadi and Dr. Wagner was that more time had elapsed since Dr. Wanger's assessment. However, as should be apparent, that Dr. Wanger opined that Plaintiff's four-hour standing limitation was short-term and should be reassessed does not necessarily mean that Plaintiff would in fact be able to stand for longer later at a later date. The opinion literally stated that reassessment should occur to make that determination. Substantial evidence requires more than relying on speculation as to what a limitation might be in the future. Therefore, the Court concludes that the ALJ erred.

The Court now determines whether this error was harmless. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Lambert, 980 F.3d at 1278,

quoting Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015).  Here, the ALJ utilized its finding that Plaintiff could stand for six hours as a basis for its conclusion in the RFC that Plaintiff could perform "light work,"[5] without modifications regarding standing or walking.  (AR 21-22.) The ALJ then used that RFC when posing hypotheticals to the VE of whether there were a significant number of jobs in the national economy that Plaintiff would be able to work notwithstanding her limitations.  (AR 28.)  In turn, the VE relied upon the RFC when giving examples of jobs Plaintiff might be able to work.  Therefore, the Court cannot say that this error was inconsequential to the ultimate nondisability determination because a standing or walking limitation might preclude Plaintiff from a significant number of jobs in the national economy. Accordingly, the error was not harmless.[6]

### B. The ALJ Failed to Properly Consider Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to properly discount Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of her physical symptoms.  (ECF No. 9, pp. 8-12.)  In particular, Plaintiff focuses on, in her view, that the ALJ improperly relied on Plaintiff's activities of daily living ("ADLs").  (Id.)  The Commissioner opposes, noting that ADLs can support an ALJ's determination to discount a claimant's subjective testimony.  (ECF No. 11, p. 6.)  In any evert, the Commissioner also notes that the ALJ also relied on other objective medical evidence to discount Plaintiff's testimony.  The Court agrees with Plaintiff.

---

[5]
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

[6] The Court observers that Plaintiff's failure to develop the record argument intersects with the ALJ's analysis of evaluating opinion evidence.  See Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022).  Though not raised by Plaintiff, the Court notes that such an analysis, based on the Court's same findings above, would give the Court further reason to believe that this error was not harmless.

11

1         As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277, quoting Brown-Hunter, 806 F.3d at 488-89. An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Id., quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78. In other words, the ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008), quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir.2002). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony.'" Lambert, 980 F.3d at 1277, quoting, Treichler, 775 F.3d 775 F.3d 1090, 1102 (9th Cir. 2014). That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Lambert, 980 F.3d at 1277. Without sufficient reasoning from an ALJ regarding the rejection of a claimant's testimony, judicial review becomes impossible, and therefore, this is reversable error. See id.

        The ALJ may consider many factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Id., at 1039. However, "[r]ecognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' [the Ninth Circuit has] held that '[o]nly if [a claimant's] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014), quoting

1 | Reddick, 157 F.3d at 722.

2 At the administrative hearing, Plaintiff testified that while she and her husband owned a 3 dog, it was a service animal for her husband's physical disability and that her husband "does 4 mostly the care for the dog." (AR 51.) Plaintiff stated that when she can, she tries to help her 5 husband. (Id.) Plaintiff testified that while she has a driver's license, she does not drive, and her 6 husband drives her places. (Id.)

7 In the mornings, Plaintiff testified that she wakes up feeling fine but then about an hour 8 later, she feels "anxiety, some depression, and most of all, my pain." (AR 56.) Plaintiff identified 9 her pain emanating from her CREST syndrome, fibromyalgia, and a pain in her stomach. (Id.) 10 Plaintiff described the skin of her hands "thickening and hardening" as part of CREST syndrome 11 and that she experiences Raynaud's syndrome. (Id.) In particular, her hands are sensitive to 12 temperature changes. (Id.) At times, her fingers "lock up on me, and they're like in a claw form 13 shape." (AR 57.) Plaintiff testified that her "skin splits at the tips of my fingers. I get splits and 14 that are very painful. When I move my hands around, you know, my skill will split, because of the 15 hardening or thickening." (Id.) Plaintiff then described the chest pains and shortness of breath she 16 had been having. (AR 58.)

17 The ALJ then asked Plaintiff is she is able to help out around the house, including 18 housework, cleaning, and laundry. (AR 60.) Plaintiff responded that she and her husband take 19 turns when either of them "feels good" or "all right." (Id.) Plaintiff stated that following a shower, 20 she requires her husband to help her with drying, dressing "because sometimes it's hard." (AR 21 61.) Thus, taking a shower "can take a while to do." (Id.) Plaintiff then testified that she and her 22 husband do their grocery shopping online and have it delivered to them. (AR 61.)

23 Plaintiff testified that she attends Sunday church services, which last approximately an hour 24 and involves sitting and at times standing. (AR 61, 68.) The church also has bible study on 25 Wednesdays and Thursdays that Plaintiff and her husband try to attend. (AR 61.) The ALJ then 26 inquired how Plaintiff keeps herself busy during the day. (AR 62.) Plaintiff responded that she 27 reads a lot, tries to do things around the house, takes care of her plants, and plays and cuddles with 28 the dog. (Id.)

Plaintiff testified that if she and her husband go to a store, she prefers to walk to get some "exercise in." (Id.) However, Plaintiff stated that she needed to take breaks because she gets short of breath and experiences her chest tightening. (Id.) Plaintiff stops for a little while until it subsides and then Plaintiff will continue walking. (Id.) Plaintiff estimated that on average, she can walk about 15 minutes before needing to take a break. (AR 64-65.) Plaintiff testified that she has problems with using utensils and can openers. (AR 66.)

In discrediting Plaintiff's complaints concerning the intensity, persistence and limiting effects of her physical symptoms, the ALJ found that the complaints were not entirely consistent with the medical evidence and other evidence in the record. (AR 23.) The ALJ then summarized Plaintiff's complaints. (AR 23.) The ALJ observed that Plaintiff alleged that she was disabled due to a combination of physical and mental abilities. (AR 22.) The ALJ noted that Plaintiff reported that she had frequent fatigue and "some shortness of breath with chest pain." (Id.) Plaintiff also reported a history of stenting procedures with approximately 6 stents placed in 2006 through 2013. (Id.) Recently, Plaintiff stated that she had a two-vessel "CABG" in November 2020. (Id.) Plaintiff reported that her skin splits open due to her CREST syndrome. (Id.) Plaintiff also described her issues with anxiety, depression, memory issues, and her relevant medications. (Id.)

The ALJ then rejected some (or all) of Plaintiff's testimony, in part, because "[Plaintiff] acknowledged a modest range of activities, including performing household activities such as dishes and dusting, as well as meal preparation, grocery shopping, watching television, shopping in stores and online, attending church and bible study weekly, attending appointments, socializing with friends, reading her bible, playing with her dog, and assisting her disabled husband when she is able to help him." (AR 22-23.) The ALJ found that this level of activity was consistent with the RFC determination. (AR 23.)

The ALJ then engaged in a lengthy discussion of Plaintiff's medical record. (AR 23-25.) As relevant here, the ALJ cited to an August 13, 2020 SSA Function Report prepared by Plaintiff, wherein she described her normal day and that Plaintiff could dress, bathe, care for hair, shave, feed herself, and use the toilet. (AR 358-59.) Plaintiff also stated that she could do housework once a week, she rarely drives, and never goes anywhere alone for safety reasons. (AR 361.)

Plaintiff indicated that she and her husband shopped in store for groceries but that they would be moving to having items delivered due to the Covid-19 pandemic. (Id.)

The ALJ also cited to the December 8, 2020 medical evaluation by Dr. Wagner, he noted Plaintiff's ADLs were:

> The claimant currently lives with her husband. She is doing some cooking and cleaning at the current time but not much since her recent surgery. She has not driven since prior to the surgery. She shops and performs her own activities of daily living though needs help putting on clothing over her head given arm movement restrictions from the recent sternotomy. She is doing some walking around her yard and buildings at home for exercise and is doing some physical therapy type exercises.

(AR 893.)

The ALJ then discussed that Plaintiff's CREST syndrome had been described as not progressive and Plaintiff was not seeking significant treatment until April 2020, when Plaintiff was treated for a shingles rash. (AR 23.) The ALJ also discussed that Plaintiff's chest pain appeared to come and go, but in October 2020, an EKG showed normal sinus rhythm. (Id.) The ALJ then noted that in a November 23, 2020 consultative note, Plaintiff denied difficulty breathing, wheezing, or coughing. (AR 930.) In addition, the ALJ discussed an April 20, 2021 clinic note wherein Plaintiff reported no chest pain, shortness of breath, or palpitations. (AR 1020.) The ALJ also pointed to a September 15, 2021 clinic note that reported the same. (AR 1123.) The ALJ then discussed a September 2020 psychological diagnostic report by G. Seward, PsyD, where Plaintiff was able to ambulate without assistance and reported that she was able to perform "basic ADLs." (AR 537-39.)

The ALJ concluded that this evidence did not support the limitations Plaintiff reported relevant to the RFC. (AR 25.) The ALJ found that "[Plaintiff's] own description of her activities, coupled with the findings on examination as noted in detail above, demonstrate that she can perform functions within the assessed [RFC]." (AR 25-26.)

The Court finds that the ALJ did not specifically identify the portion of Plaintiff's testimony he found not to be credible and explain what evidence undermines the testimony. Treichler, 775 F.3d at 1102. In particular, the Court notes that the ALJ structured its opinion to

1 begin by finding that Plaintiff's allegations of intensity, persistence, and limiting effects of her symptoms were not entirely consistent with or well supported by the medical evidence. (AR 22.) The ALJ then gave a brief (if perhaps glossed) rendition of Plaintiff's complaints and found that, generally, the level of activity Plaintiff had alleged supported the ALJ's RFC determination. (AR 22-23.) Then, following a summarization of Plaintiff's medical records, the ALJ again generally stated that "the record does not support limitations that prevent [Plaintiff] from working within the [RFC]. [Plaintiff's] own description of her activities, coupled with the findings on examination [sic] as noted in detail above, demonstrate[s] that she can perform functions within the assessed [RFC]." (AR 25-26.)

Accordingly, one the one hand, the ALJ seemingly discredited some (or all) of Plaintiff's complaints because they were inconsistent with the objective medical evidence. Yet, on the other hand, the ALJ circuitously credits Plaintiff's complaints as in fact supporting the RFC. Of course, this is not a paradox; an ALJ may find a claimant's complaints partially credible and partially incredible. The problem with this opinion, however, is that the ALJ did not show his work by explaining which complaints or allegations he credited, discredited, or gave partial credit toward. Thus, the Court is unable to review the ALJ's rationale. While an ALJ need not perform a line-by-line exegesis on a plaintiff's allegations, "[t]he ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" Treichler, 775 F.3d at 1103, quoting Reddick, 157 F.3d at 722. The ALJ erred, and the Ninth Circuit has held that this type of error is not harmless. Id.

Finally, because courts "cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions," id., the Commissioner's argument on this point is without merit.

## V.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is REVERSED and that this matter shall be REMANDED to the Social Security Agency for further proceedings. 42 U.S.C. 405(g). It is FURTHER ORDERED

that judgment be entered in favor of Plaintiff Carmen Colleen Castaneda and against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **June 3, 2025**

STANLEY A. BOONE
United States Magistrate Judge